

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| ST. LOUIS ASSOCIATION OF REALTORS, | ) ) ) | No. ED103385 |
| Respondent, | ) ) | Appeal from the Circuit Court of St. Louis County, Missouri |
| vs. | ) ) | 2107CC-03604 |
| CITY OF FERGUSON, | ) ) | Honorable Mary Elizabeth Ott |
| Appellant. | ) ) | Filed: September 27, 2016 |

### OPINION

This dispute makes its third appearance in this Court. The St. Louis Association of Realtors (Realtors) filed a petition for declaratory judgment challenging an ordinance enacted by the City of Ferguson that purported to regulate the business of renting residential property. The trial court found that Ferguson lacked the authority to enact the ordinance because the business of renting residential property was not mentioned in section 94.110,[1] the Missouri statute that empowers third class cities to impose and collect license taxes on certain businesses. We find that because Ferguson is a constitutional charter city, it is not limited to passing ordinances regulating only the types of businesses set forth in section 94.110, and therefore, we reverse and remand for further proceedings consistent with this opinion.

---

[1] All references to statutes are to RSMo 2000 unless otherwise indicated.

### Facts and Procedural History

In 2006, Ferguson enacted an ordinance creating a regulatory fee and licensing system for owners of residential property within Ferguson who seek to lease or rent their property to others. The ordinance mandates that property owners meet certain requirements and pay a fee to obtain a license to rent or lease their property. Property owners must undertake building inspections, file affidavits stating whether any adult tenants are registered sex offenders, and maintain a property manager within twenty-five miles of the rental property. The ordinance makes it unlawful for property owners to rent or lease their property without a license.

License holders are subject to two classifications: 1) responsible or 2) provisional. The "responsible" classification is granted to owners who have submitted a lease agreement setting forth the number and names of the persons allowed to reside in the property, have paid the license fee, and have maintained their property in good condition free of nuisances. The "provisional" classification is for owners who may not meet the "responsible" classification requirements because of nuisance or property maintenance problems. The ordinance allows owners with a "provisional" classification to attain the "responsible" classification status upon the remediation of any problems with the property.

In 2008, Realtors challenged the validity of the ordinance on constitutional and statutory grounds. Specifically, Realtors alleged: 1) Ferguson's license program is unauthorized by its charter or by statute; 2) Ferguson's classifications of "responsible" or "provisional" licenses violate due process and are unconstitutionally vague and arbitrary;

2

3) Ferguson's license fee is a tax that violates the Hancock amendment[2]; 4) Ferguson has no authority to require owners to determine whether any tenant is subject to and in compliance with Missouri's sex offender registration law; 5) Ferguson's licensing program violates Missouri law to the extent that it restricts the right to post property for sale or lease; and 6) Ferguson's licensing program is in excess of any authority delegated to Ferguson by the state and is otherwise unconstitutional. Realtors voluntarily dismissed count III. The court held a bench trial and took the matter under submission.

In 2009, while the case was pending, Ferguson amended the ordinance to make the term "residential rental property" synonymous with "rooming house." In 2010, the trial court dismissed Realtors's petition for lack of standing. Realtors appealed and in 2011 the Missouri Supreme Court held that Realtors had standing and remanded the case for a trial on the merits. *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620 (Mo.banc 2011). On remand, the trial court dismissed Realtors's petition finding that the 2009 amendments mooted its challenge to the 2006 ordinance.

In 2014, this Court reversed the trial court's decision and held that the 2009 amendments did not supersede the 2006 ordinance and that therefore Realtors's petition was not moot. *St. Louis Ass'n of Realtors v. City of Ferguson*, 448 S.W.3d 340, 342 (Mo.App.E.D. 2014). We remanded the case for further proceedings on the merits of Realtors's petition, and in doing so, we noted that the trial court should consider allowing Realtors to amend its petition and/or supplement the record so that the case could be litigated and resolved in light of the 2009 amendments. *Id.* at 343 n.2.

---

[2] MO. CONST., art. X, § 22.

3

On remand, Realtors filed a motion for leave to amend its petition and to supplement the trial record. The trial court granted the motion, but Realtors never filed an amended petition, and the parties agreed to submit the case to the court on the original petition and the record before the court, including the evidence that was presented at the trial in 2008.[3] In July 2015, the trial court issued its order and judgment, finding that because section 94.110 does not mention the rental of residential property, the Ferguson ordinance was not authorized and was therefore invalid. The court also found that the "responsible" and "provisional" owner classifications in the ordinance were not constitutionally void for vagueness but the court did not specifically address the issues raised in Realtors's counts IV, V, and VI. This appeal follows.

## Standard of Review

The constitutional validity of an ordinance is a question of law that is reviewed de novo. *City of Sullivan v. Sites*, 329 S.W.3d 691, 693 (Mo.banc 2010). Under Rule 84.14,[4] an appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give. Only allegations of error presented to or expressly decided by the trial court shall be considered on appeal. § 512.160.

---

[3] Nevertheless, the trial court makes reference to Reators's amended petition, which is not in the record, and to matters outside of the original petition, including the 2009 amendments, in its judgment. On remand, we direct the trial court and the parties to clearly identify the pleadings at issue and to ensure that those pleadings are properly filed with the trial court so that we are given an adequate record for review.

[4] All references to rule are to Missouri Court Rules (2016) unless otherwise indicated.

## Discussion

Article VI, section 15 of the Missouri Constitution directs the general assembly to provide laws for the organization and classification of cities and towns, restricted to no more than four classes. This classification scheme was organized so that the powers of each class are defined by general laws and so that such municipal corporations of the same class possess the same powers and are subject to the same restrictions. *Id.*; *Fraternal Order of Police Lodge No. 2 v. City of St. Joseph*, 8 S.W.3d 257, 261 (Mo.App.W.D. 1999).

As an alternative to a city electing to become a class city, Article VI, section 19 permits a qualifying city to frame and adopt a charter for its government. *City of St. Joseph*, 8 S.W.3d at 261-62. The constitutional authority for cities to adopt and amend a charter intends to grant cities broad authority to tailor a form of government that its citizens believe will best serve their interests. *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo.banc 1996).

The enactment of a charter form of government by a city automatically supersedes the statutory provisions applicable to class cities. *City of St. Joseph*, 8 S.W.3d at 262 (citing *McGhee v. Walsh*, 155 S.W. 445, 448 (Mo.banc 1913)). A statute exclusively applicable to a class city, generally has no application to a city operating under the charter form of government. *City of St. Joseph*, 8 S.W.3d at 262. If all cities were subject to the same laws there would be no reason to have different classes of cities. *Riden v. City of Rolla*, 348 S.W.2d 946, 951 (Mo.banc 1961).

Article VI, section 19(a) gives charter cities all powers which the general assembly has authority to confer upon any city, provided such powers are consistent with the Constitution and are not limited or denied by the city's charter or by statute. MO. CONST.

5

art. VI, § 19(a); *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 210 (Mo.banc 1986). The emphasis is not on whether the charter city has the authority to exercise the power involved, but rather on whether the exercise of that power conflicts with the Missouri Constitution, state statutes, or the charter itself. *Cape Motor Lodge, Inc.*, 706 S.W.2d at 211; see § 71.010. Thus, the issue is whether an ordinance is consistent with the constitution and not limited or denied by the constitution, by statute, or by the charter itself. *Cape Motor Lodge, Inc.*, 706 S.W.2d at 210.

Here, the trial court found that section 71.610 limited Ferguson's power to impose a license tax on the business of renting residential property because section 94.110 did not specifically set forth that type of business as taxable. Section 71.610 provides that no municipal corporation shall have the power to impose a license tax upon any business, avocation, pursuit or calling, unless such business, avocation, pursuit or calling is specially named as taxable in the charter, or unless such power is conferred by statute. The power conferred by state statute to tax businesses does not have to be specially named but can be named generally. See *Erb Indus. Equip. Co., Inc. v. City of Cape Girardeau*, 845 S.W.2d 551, 552 (Mo.banc 1993) (holding that because section 94.110 gave the power to tax "merchants of all kinds," the City of Cape Girardeau could tax a merchant on its sales and service of farm, construction, and forestry equipment even though not specially named).

Section 94.110 grants third class cities the power to collect license taxes on a multitude of businesses. Similarly, section 94.270[5] grants fourth class cities the power to license, tax, and regulate certain businesses and occupations, section 94.360 grants special

---

[5] RSMo 2015 Supp.

6

charter cities the power to collect license taxes on certain businesses, and section 94.400 sets forth a taxing scheme applicable to constitutional charter cities.

Ferguson is a constitutional charter city. Ferguson's charter[6] grants it the power, through the enactment of ordinances, to license, tax, and regulate all business services, occupations, professions, vocations, activities or things of any nature which are authorized by state statute with respect to any statutory, special charter, or constitutional charter city. The charter further provides that the above-described power shall not be interpreted to limit the general power of the city to impose license taxes upon any business, vocation, pursuit, or calling not prohibited by law. Thus, Ferguson, by incorporating in its charter the power to license and tax any business authorized by state statute applicable to any statutory, special charter, or constitutional charter city, has the authority to impose a license tax on any business which Missouri statutes have authorized statutory, special charter, or constitutional charter cities to regulate. See See *Erb Indus. Equip. Co., Inc.*, 845 S.W.2d at 552 (noting that such incorporation by reference is lawful).

Turning to the circumstances of this case, we find that the trial court has misconstrued the impact of section 94.110 on the issues in this case. The trial court found that since section 94.110 does not specifically mention the business of renting residential property, Ferguson therefore lacked the authority to regulate that business. The trial court erred in this regard because its holding is based on an incorrect interpretation of the scope and impact of section 94.110 with respect to charter cities like Ferguson.

---

[6] Article I, section 19 of the Missouri Constitution dictates that the courts shall take judicial notice of city charters.

7

Section 94.110, generally applicable to third class cities, is just one potential source of power Ferguson had to impose a license tax. See *Erb Indus. Equip. Co., Inc.*, 845 S.W.2d at 552 (finding that because Cape Girardeau's charter gave it the power to tax all businesses authorized by statute applicable to third and fourth class cities, Cape Girardeau has the power pursuant to section 94.110 to tax merchants of all kinds). Because Ferguson's charter granted it the authority to impose a license tax authorized by state statute with respect to any statutory, special charter, or constitutional charter city, Ferguson could have also imposed a license tax pursuant to the power conferred by a statute applicable to those cities. Thus, the trial court erred in finding that Ferguson lacked the authority to regulate the renting of residential property merely because it was not specifically set forth by section 94.110.

Moreover, a critical, yet unresolved issue here, is whether Ferguson's license fee is even a tax at all, or whether it is a user fee. See *Ashworth v. City of Moberly*, 53 S.W.3d 564, 568-78 (Mo.App.W.D. 2001) (finding that the City of Moberly's ordinance requiring owners of a rental unit to obtain a rental permit conditioned on the payment of a permit and inspection fee to be a user fee, and not a tax, and therefore not subject to section 71.610). The trial court did not decide this issue or the issues raised in Realtors's counts IV, V, and VI.[7] Before we review these issues they should be decided by the trial court. Accordingly,

---

[7] Despite finding that the ordinance was invalid based upon section 94.110, the trial court also held that the ordinance classifications of a "responsible" and "provisional" were not void for vagueness as alleged in Realtors's count II. While Realtors did not cross-appeal on this issue, Realtors argue in its response brief that there are numerous provisions in the ordinance that violate the due process clause because they are unconstitutionally vague. In the absence of a cross-appeal, ordinarily a party cannot complain of an adverse ruling by the trial court. See *Goldberg v. State Tax Comm'n*, 618 S.W.2d 635, 642 (Mo. 1981); *Bldg. Owners & Managers Ass'n of Metro. St. Louis, Inc. v. City of St. Louis*, 341 S.W.3d 143, 147 n.4 (Mo.App.E.D. 2011). Further, to preserve a constitutional claim, a constitutional

8

we reverse and remand this case and instruct the trial court to issue a decision on the merits of Realtors's counts I, II, IV, V, and VI.

## Conclusion

For the reasons stated above, the trial court's judgment is reversed and remanded for proceedings consistent with this opinion.

_James M. Dowd, Judge_

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.

---

question must be preserved at every stage of review to prevent surprise to the opposing party and to permit the trial court an opportunity to fairly identify and rule on the issues. _State ex rel. Tompras v. Bd. Of Election Com'rs of St. Louis Cnty._, 136 S.W.3d 65, 66 (Mo.banc 2004). Rule 84.04(f) provides, however, that the respondent's brief may also include additional arguments in support of the judgment that are not raised by the points relied on in the appellant's brief. Given our remand and the fact that Realtors raises issues that were not decided by the trial court, we direct the trial court to allow the parties an opportunity on remand to develop a record and raise all arguments on these issues so that the trial court's decision provides this Court an adequate record on appeal.